J-A28035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CORBIN J. ROY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DANIELLE N. CIANCOTTA AND | : | No. 927 MDA 2025 |
| DARRIN SCOTT MACFARLANE, JR. | : | |

Appeal from the Order Entered June 12, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2023-FC-002346-03

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED MARCH 24, 2026**

Corbin J. Roy ("Father") appeals from the custody order which, *inter alia*, awarded Danielle N. Ciancotta ("Mother") sole legal and primary physical custody of her son, J.C.F. (born in September 2019), and shared legal and primary physical custody of their daughter, T.A.R. (born in July 2021) (collectively, "the Children").  After careful review, we affirm the custody order.

Father and Mother (collectively "Parents") are the biological parents of T.A.R., while Mother and Darrin Scott MacFarlane, Jr. ("MacFarlane") are the

biological parents of J.C.F.[1, 2] Parents, who were never married, each have a significant history of opioid addiction and criminal behavior predating these proceedings. *See* N.T., 3/24/25, at 35, 102-03; *see also* N.T., 5/9/25 (Afternoon), at 5.[3] Parents' relationship began during Mother's pregnancy with J.C.F., and lasted for approximately five years, until they separated in September 2023. *See* N.T., 3/24/25, at 89. As detailed further *infra*, Parents' relationship was tumultuous and volatile. On the day of Parents' separation, they were involved in a physical altercation at their shared residence, which resulted in the entry of competing temporary protection from abuse ("PFA") orders. *See* Complaint for Custody, 10/5/23, at Exhibit A2; *see also* N.T., 3/24/25, at 106-11; N.T., 5/9/25 (Morning), at 98-100. The Children were not listed as protected parties on either of these temporary PFA

_____

[1] MacFarlane has since relinquished his parental rights to J.C.F. *See* Affidavit of Voluntary Relinquishment, 10/18/24, at 1-2. Although listed as a party, MacFarlane did not participate in the trial court proceedings, nor in the instant appeal, despite notice of both.

[2] The trial court determined Father had standing to seek custody of J.C.F. *in loco parentis.* *See* Interim Order for Custody, 1/12/24, at 2; *see also* 23 Pa.C.S.A. § 5324(2).

[3] We note that the heading on the pages of the transcript for the March 24, 2025 hearing bear an incorrect date of April 24, 2025, and the heading on the pages of the transcript for the May 9, 2025 hearing bear an incorrect date of June 10, 2025.

orders, which were each subsequently withdrawn. In October 2023, Father initiated these proceedings by filing a custody complaint.[4]

On January 12, 2024, the trial court entered an interim custody order that established shared legal custody of the Children and awarded Father primary physical custody. Mother was granted supervised partial physical custody every Sunday from 9:00 a.m. until 7:30 p.m. The order required that Mother's periods of physical custody remain supervised until she underwent a threat of harm evaluation. The order also prohibited Parents from posting "any derogatory or negative comments on social media about the other parent or their household members." Interim Order, 1/12/24, at 13. Finally, the order provided that Parents would have "equal access" to the Children's medical records. *Id*. at 4. On April 9, 2024, the terms of the interim order became final with the consent of the parties. *See* Order, 4/9/24, at unnumbered 1-2.

In August 2024, Father filed a petition for relocation and modification of custody, wherein he requested leave to relocate with the Children from York, York County, Pennsylvania, to Montoursville, Lycoming County, Pennsylvania. Father averred that he had been offered a new position with his employer,

---

[4] Notably, as observed by the trial court, these proceedings have been plagued by the "continued filing of excessive, and at times frivolous, motions," by both Parents. Trial Court Opinion, 6/12/25, at 2 n.7. Given the volume of filings made by Parents in this matter, we will refrain from detailing every filing, and will instead focus upon the particular filings implicated by the instant appeal.

which would require him to move to Montoursville. Relatedly, he requested that Mother's periods of partial physical custody be modified to every other Saturday and Sunday for the same time periods. *See* Father's Petition for Relocation and Modification, 8/1/24, at ¶ 18. Mother filed a response objecting to Father's relocation.

Mother thereafter filed a petition for enforcement and modification of custody, wherein she requested, *inter alia*, that the court grant her primary physical custody of the Children during the school year, and award Father primary physical custody during the summer. *See* Mother's Petition for Enforcement and Modification, 8/7/24, at ¶ 6. Mother also requested that Father undergo a psychological evaluation. *See id*. at ¶ 9.

In October 2024, Father filed a petition for contempt against Mother in connection with a verbal altercation that occurred between Parents during a medical appointment for J.C.F. on October 4, 2024. *See* Father's Petition for Contempt, 10/23/24, at ¶¶ 11-22. Father averred that, during this argument, Mother claimed to have unilaterally removed Father's access to J.C.F.'s medical records. *See id*. at ¶ 23. Father also claimed that before and after the October 4 conflict, Mother had disparaged him in front of the Children, in text messages, and on social media. *See id*. at ¶¶ 30-61.

In December 2024, Mother filed a *pro se* petition for contempt alleging that Father was making legal decisions regarding the Children's schooling and

medical care without her input.[5]  **See** Mother's Petition for Contempt, 12/13/24, at ¶ 6.  Mother also claimed that Father was engaging in parental alienation and disparaging her to the Children.  **See id**.

In February 2025, Father filed a petition seeking a determination of "exigent circumstances" pursuant to 23 Pa.C.S.A. § 5337(g)(3), which would allow him to relocate immediately pending a hearing on his formal request.  Specifically, Father alleged he would suffer professional "ramifications" if the move was delayed.  Father's Petition for Determination of Exigent Circumstances, 2/13/25, at ¶ 39.

Contemporaneously, Parents each underwent a threat of harm assessment in connection with these proceedings.  Mother's assessment was conducted by a social worker, Cameron Romer ("Ms. Romer"), while Father's assessment was conducted by Kasey Shienvold, Psy.D. ("Dr. Shienvold").  Since they are a central consideration of this appeal, the results of these assessments bear some explanation at this juncture of our review.

Based upon Father's representations during his assessment, Dr. Shienvold concluded that Father's "mental health" did not pose a "risk of harm" to the Children.  N.T., 3/24/25, at 16-17.  As part of his assessment, however, Dr. Shienvold also interviewed Mother, wherein Mother disclosed

---

[5] Although Mother has sporadically been represented by counsel during these proceedings, she has largely represented herself.  Both in the subject custody hearings and in this Court, Mother has proceeded *pro se*.

that Father was physically, sexually, financially, and emotionally abusive.

Specifically, Dr. Shienvold explained:

> [Mother] described [Father] as incredibly controlling, limiting her access to money or transportation and [not] allowing her to leave the house without supervision, placing cameras in the home, controlling what she could and could not do within the family relationships, within external relationships outside of the family, taking away her car keys and leaving her stuck at home with [the Children].
>
> [Mother] also alleged that [Father] sexual[ly] assaulted her repeatedly while she was under the influence of her sleeping medication and he would taunt her with videos of those inciden[t]s. He would withhold money if he was upset with her.
>
> [Father] placed cameras in the home so he could watch her. He locked her out of the home when he was upset with her, controlling her cell phone, taking it from her as a consequence, using the current custody arrangement and access to the [C]hildren as a means of coercing her to have continued sexual relations with him, and then also speaking negatively to the [Children] about her so that it would interfere with her relationship with the [Children].

N.T., 3/24/25, at 21-22.

Dr. Shienvold observed that Mother's accusations were "obviously incredibly severe, significant and scary, if accurate[.]" *Id*. at 23. Since the scope of his assessment was limited to a psychological assessment of Father, Dr. Shienvold explained that he was unable to reach a conclusion regarding the "truth" of Mother's troubling allegations. *Id*. at 30. Although he testified that Father's "psychological profile did not fit the mold" of the worst of Mother's allegations, Dr. Shienvold also averred that Father's "personality style" would support a conclusion that he "truly believes he knows how to do

things better than [Mother]," and, thus, he opined Father would be capable of ignoring Mother's emotions and opinions. *Id*. at 32. Finally, Dr. Shienvold opined that if Mother's accusations were true, that would "change [his] opinion" regarding Father's threat of harm assessment. *Id*. at 39.

Concomitantly, Ms. Romer concluded that Mother posed a threat of harm to the Children solely based upon her "emotional dysregulation" when communicating with Father. N.T., 3/24/25, at 44-45. The only potential harm identified by Ms. Romer, however, was her belief that "the ongoing emotional conflict the [Children] are experiencing is unhealthy." *Id*. at 49. Ms. Romer further testified that it was possible that Mother's dysregulation could be a "trauma response" caused by the abuse she alleged that Father had perpetrated upon her, noting that "[i]f all of that abuse did occur, it is a response that is seen with someone who would suffer from [PTSD]." *Id*. at 45. As with Dr. Shienvold, Ms. Romer could not speak to the truth of Mother's allegations regarding Father.

The trial court conducted trial proceedings on the parties' competing petitions on March 24, 2025, and May 9, 2025. *See* N.T., 3/24/25, at 8-9 (confirming that the scope of the underlying hearings was limited to the four petitions noted above). Parents each testified and adduced various pieces of documentary evidence. The court also heard expert testimony from Dr. Shienvold, and lay testimony from Ms. Romer, and Jenna Kahler ("Ms. Kahler"), the certified registered nurse practitioner who has been overseeing

Mother's medication management since May 2022. During Mother's testimony, she expressed a desire to return to her hometown in Strasburg, Pennsylvania, in the Poconos. *See* N.T., 5/9/25 (Morning), at 81-82.

On June 11, 2025, the trial court entered an order denying Parents' respective contempt petitions. *See* Order, 6/11/25, at 1. On June 12, 2025, the court entered a final custody order and an opinion setting forth its detailed findings with respect to the custody factors set forth at 23 Pa.C.S.A. § 5328(a) and the relocation factors set forth at 23 Pa.C.S.A. § 5337(h). *See* Final Order for Custody, 6/12/25, at 1-15, *see also* Trial Court Opinion, 6/12/25, at 6-25. Based upon its assessment of the testimony and evidence presented, the court awarded Mother primary physical custody of the Children and sole legal custody of J.C.F. *See id*. at 1-4. The trial court awarded Parents shared legal custody of T.A.R., and awarded Father partial physical custody of the Children. *See id*. Finally, the court granted Father's request to relocate to Williamsport, and Mother's request to relocate to Strasburg. *See id*. at 14-15.

Father timely filed a notice of appeal, and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), and the trial court thereafter authored an opinion pursuant to Rule 1925(a)(2)(ii).

Father raises the following issues for our review:

1. Whether the trial court abused its discretion and erred as a matter of law by declining to accept the joint stipulations filed of record by Mother's former counsel?

2. Whether the trial court abused its discretion and erred as a matter of law by allowing Mother to utilize hundreds of pages of

exhibits that were provided to [Father] four (4) business days before the second day of the custody trial and two (2) months after Father had concluded his direct examination?

3. Whether the trial court abused its discretion and erred as a matter of law by relying on the opinions of fact witness [Ms.] Kahler?

4. Whether the trial court abused its discretion and erred as a matter of law by failing to accept the uncontradicted conclusions of Father's expert, Dr. . . . Shienvold, and instead reaching its own conclusions unsupported by competent evidence of record?

5. Whether the trial court abused its discretion and erred as a matter of law by failing to accept the uncontradicted conclusions of Mother's [expert], [Ms.] Romer, and instead reaching its own conclusions unsupported by competent evidence of record?

6. Whether the trial court abused its discretion and erred as a matter of law by granting Mother primary physical custody of the [Children] contrary to both the weight of the evidence and best interests of the Children based upon all the relevant factors enumerated in [section] 5328(a) and [section] 5328(a.2), and failing to give weighted consideration to the factors that affect the safety of the Children (including but not limited to, the physical, emotional, and psychological well-being of the Children)?

7. Whether the trial court abused its discretion and erred as a matter of law by making factual findings and conclusions of law unsupported by the record and contrary to the best interest of the [Children]?

8. Whether the trial court abused its discretion and erred as a matter of law by granting Mother sole legal custody of [J.C.F.] contrary to both the weight of the evidence and best interests of the minor child based upon all relevant factors enumerated in [section] 5328(a)?

9. Whether the trial court abused its discretion and erred as a matter of law by awarding Mother sole legal custody of [J.C.F.] when no such request was raised by Mother in her pleadings or during the two-day custody trial?

- 9 -

10. Whether the trial court abused its discretion and erred as a matter of law by focusing its analysis under Kayden's Law almost exclusively on the element of risk [of] abuse, and thereby fail[ed] to properly consider the risk of harm to the Children as set forth in 23 Pa.C.S.A. §[ ]5323(e)(1)-(2)?

11. Whether the trial court abused its discretion and erred as a matter of law by failing to consider all uncontradicted evidence and by concluding that Father did not present clear and convincing evidence sufficient to rebut the presumption, set forth in 23 Pa.C.S.A. § 5327(b), that Mother, the biological parent of [J.C.F.], should be awarded custody?

12. Whether the trial court abused its discretion and erred as a matter of law by *sua sponte* granting Mother the right to relocate from York County to the Poconos despite Mother failing to file a notice of relocation and/or comply with the statutory notice requirements set forth in 23 Pa.C.S.A. § 5337(c)?

13. Whether the trial court abused its discretion and erred as a matter of law by entering its opinions and orders thirty-three (33) days after the trial concluded without entering an order showing good cause as required under Pa.R.C.P. 1915.4(d)?

Father's Brief at 3-8 (issues reordered for ease of disposition, unnecessary capitalization omitted, some capitalization added).

Our standard of review of a custody order is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its

- 10 -

factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up). It is not our function "to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion." *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (cleaned up).

Father's first three issues challenge the trial court's evidentiary rulings. Our standard of review over such evidentiary rulings is well-settled:

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014).

In Father's first issue, he challenges the trial court's ruling to exclude from evidence a joint stipulation of facts. Initially, we must determine whether Father preserved this issue for our review. In order to preserve an evidentiary issue for appellate review, a party must make a timely and specific objection

- 11 -

at the appropriate stage of the proceedings before the trial court.  ***See Hong v. Pelagatti***, 765 A.2d 1117, 1123 (Pa. Super. 2000).  On appeal, this Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.  ***See id***.; ***see also*** Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

The subject stipulation was prepared by Mother's former counsel, Jacqueline H. Boylhart, Esquire ("Attorney Boylhart").  ***See*** Joint Stipulation of Facts, 12/6/24, at unnumbered 1-4.  Therein, Mother purportedly stipulated to, *inter alia*, the custody factors set forth at section 5328(a) and the facts alleged in Father's October 23, 2024 petition for contempt.  ***See id***. at 2-4.  Three days after Attorney Boylhart filed this stipulation; however, she filed a motion to withdraw from representation based upon "[i]rreconcilable differences" with Mother concerning the "handling of the case."  Motion to Withdraw, 12/9/24, at 1; ***see also*** Trial Court Opinion, 8/8/25, at 9-10 (noting that Attorney Boylhart also sought to withdraw "due to her concerns for her own professional competency in custody matters").  With Mother's consent, the trial court granted Attorney Boylhart's request to withdraw two days later.

When Father's attorney sought to introduce the stipulation on the first day of trial, Mother objected and averred that Attorney Boylhart had prepared the stipulation without her knowledge or approval.  ***See*** N.T., 3/24/25, at 5-6.  The trial court did not immediately rule upon the admissibility of the

stipulation, and the custody trial proceeded. At the conclusion of the second day of trial, Father's counsel re-raised the matter of the stipulation. The trial court indicated that it would not accept the stipulation based upon Mother's objections. *See* N.T., 5/9/25, at 60 (wherein the trial court explained that "Mother had indicated that the stipulation [] was submitted by her former counsel[,] that she was not aware of it, not in agreement with it, and that she did, essentially, not agree"). Father did not object to the trial court's evidentiary ruling, nor offer any argument in response to the court's exclusion of the stipulation. *See id*. at 60-62.

Based upon the foregoing, we conclude that Father has waived any challenge to the exclusion of the stipulation. Although Father could have objected to the trial court's ruling to exclude the stipulation, he elected to stand silent. Accordingly, he failed to preserve his first issue for our review.[6]

_____

[6] Even if Father had preserved this issue, it would warrant no relief. Initially, we note that Father failed to provide any discussion of the law pertaining to this issue. *See* Pa.R.A.P. 2119(a) (requiring appellants to support their claims for relief with "discussion," including "citation of authorities as are deemed pertinent"); *see also* Father's Brief at 69-72. Moreover, "[a] court may allow a party to withdraw from a stipulation if . . . the stipulation stemmed from fraud, accident, mistake, inadvertence, surprise, or excusable neglect, or that some other reason justifies relief." *Commonwealth v. Daniels*, 387 A.2d 861, 863 (Pa. 1978). Here, given that Mother claimed that she was unaware of the stipulation that her former counsel prepared shortly before seeking to withdraw from representation, we would find this evidence to be reasonably satisfactory in establishing that the stipulation was the product of a mistake, inadvertence, surprise, or another reason that justifies relief. *See id*.

In Father's second issue, he challenges the admission of the exhibits that Mother offered during the second day of the custody trial, which the trial court admitted over Father's objections. Notably, the trial court entered a pretrial order which required that exhibits "shall be exchanged by the parties at least one (1) week prior to the custody trial." Order, 11/12/24, at 7. As explained above, the first day of the custody trial commenced on March 24, 2025; however, a second day of trial became necessary, and the trial court scheduled an additional day of trial for May 9, 2025. Mother sought to present certain exhibits during the second day of trial, and provided copies of these exhibits to Father on May 3, 2025, six days prior to the second day of trial.

Father submits that the trial court abused its discretion when it denied his motion to exclude Mother's exhibits. Father reasons that, because the pretrial order required the parties to submit exhibits one week prior to trial, Mother was required to provide him with all of her exhibits seven days before the start of the trial, which commenced on March 24, 2025. Father asserts that he was prejudiced by the trial court's ruling because his counsel had prepared for the second day of trial based on the exhibits that Mother had provided to him prior to the first day of trial.

The trial court considered Father's second issue and determined that it lacked merit. The court reasoned:

> Initially, there is no information or citation to which of [Mother's] exhibits were actually proffered and admitted [at trial]. Regardless, what is ironic is that Father[] himself, through counsel, utilized a binder of "rebuttal" exhibits on the second day

of trial **which were never provided to Mother**[.] [T]he Court overruled Mother's objection and permitted [Father's rebuttal] exhibits to be used. [**See**] N.T. 5/9/25, [at] 19-22. Mother actually provided her exhibits to Father's counsel the Saturday before the second day of trial, which occurred on a Friday. **Id**. at 47-49. It defies logic that Father's counsel would have the audacity to object to exhibits which were provided nearly a week in advance of trial, when [he was] permitted to utilize exhibits that were **never** provided to Mother.

Trial Court Opinion, 8/8/25, at 6 (emphasis in original).

Based on our review, we discern no abuse of discretion by the trial court to the extent that it permitted the use and/or admission of Mother's exhibits. The record reflects that, during the second day of trial, Mother explained that her understanding of the pretrial order was that there was a "seven-day guideline," and she had attempted to provide the exhibits to Father in a timely fashion by sending them to him approximately one week before the second day of trial. N.T., 5/9/25 (Morning), at 48-49. The trial court credited Mother's interpretation of the pretrial order and concluded that Mother's attempts to comply were "close enough." **Id**. at 49. Thus, the trial court overruled Father's objection and permitted Mother to use her exhibits. **See id**.

To the extent Father claims Mother violated the pretrial order, we find the terms of the order to be silent as to when exhibits were required to be provided by the parties in the event that the custody trial took more than one day, let alone if it were to necessitate a bifurcated trial spanning a period of two months. **See** Order, 11/12/24, at 1 (providing that "[t]he trial will be

***one day*** in length") (emphasis added). Under such circumstances, we do not find the trial court's interpretation of its own order to be unreasonable, *i.e.*, that the parties were only required to proffer their exhibits one week prior to the date scheduled for the presentation of their case, as opposed to the first day of a bifurcated trial.

In any event, Father has not explained how the trial court's ruling was harmful or prejudicial to his case. **See Phillips**, 86 A.3d at 920. Indeed, had the trial court ruled that Mother's exhibits were excluded due to a violation of the pretrial order, the court would have necessarily had to rule that Father's rebuttal exhibits were similarly excluded due to his violation of the same order. Accordingly, as we discern no abuse of discretion by the trial court in overruling Father's objection to Mother's exhibits, we conclude that Father's second issue merits no relief.

In his third issue, Father challenges the trial court's admission of the testimony of Ms. Kahler, who was not identified as an expert prior to trial and, thus, could only testify as a fact witness despite her status as a registered nurse practitioner. Pursuant to Pennsylvania Rule of Evidence 701, a lay witness may offer "testimony in the form of an opinion" if the testimony is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness' testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Pa.R.E. 701.

At trial, Ms. Kahler testified that Mother had been "compliant" in taking her medication and consistently attending medication appointments every "four to six weeks." N.T., 3/24/25, at 56-57. She also testified that Mother was enrolled in group and individual therapy once per week and had attended all of her appointments through March 2025. *See id*. at 62. Ms. Kahler further noted that over her three years of medication management, Mother's reliance on psychotropic prescriptions had significantly decreased. *See id*. at 58. Ms. Kahler explained that Mother was originally prescribed two mood stabilizers, two sleeping medications, and one anxiety medication, Lorazepam; however, as of the date of the hearing in March 2025, Mother only took Lorazepam "as needed." *Id*. Overall, Ms. Kahler opined that Mother was handling her mental health needs "very well." *Id*. Specifically, Ms. Kahler testified it was her experience that Mother's "mental health symptoms have been better managed with better coping skills" during her approximately three years of treatment. *Id*. at 59. Ms. Kahler also disagreed with Ms. Romer's threat of harm assessment, opining that Mother's struggles with emotional dysregulation would not impact her ability to care for herself or the Children. *See id*. Finally, Ms. Kahler explained that Mother has been diagnosed with major depressive disorder, generalized anxiety disorder, insomnia, and PTSD. *See id*. at 63. Ms. Kahler stated that Mother suffers from PTSD as a result of "past trauma and abuse," which was at least partially connected to her relationship with Father. *Id*. at 63-64.

Father challenges the portions of Ms. Kahler's testimony which opined on Mother's mental health diagnoses, including major depressive disorder, generalized anxiety disorder, insomnia, and PTSD. Father claims that Ms. Kahler's testimony exceeded the scope of opinion testimony permitted by a lay witness pursuant to Rule 701.

Once again, we must preliminarily determine whether Father preserved this issue for our review. As explained above, in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings at a time when any error committed could have been corrected by the trial court. **See Hong**, 765 A.2d at 1123; **see also** Pa.R.A.P. 302(a). Our review of the transcript reveals that Father did not tender a contemporaneous objection to the admission of Ms. Kahler's allegedly inappropriate testimony. **See** N.T., 3/24/25, at 63-65. Accordingly, as Father failed to raise any objection to the testimony provided by Ms. Kahler, we conclude that his third issue is waived.

In his fourth and fifth issues, Father challenges the trial court's consideration of, and conclusions regarding, the interrelated testimonies provided by Dr. Shienvold and Ms. Romer regarding their respective threat of harm assessments. Pertinent to Father's arguments, "[w]hile a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by

competent evidence of record." ***M.A.T. v. G.S.T.***, 989 A.2d 11, 20 (Pa. Super. 2010) (citation omitted). So long as the trial court's conclusions are founded in the record, the lower court is not obligated to accept the conclusions of the experts. ***See id***. However, it is an abuse of discretion for a trial court to dismiss as unpersuasive, and to totally discount, uncontradicted expert testimony. ***See id***.

In his fourth issue, Father challenges the trial court's consideration of the testimony provided by Dr. Shienvold regarding his assessment of the risk of harm posed by Father to the Children. Father acknowledges that Dr. Shienvold interviewed Mother, and that he detailed in his expert report the allegations that Mother made against Father, including repeated sexual assaults, and emotional and financial abuse of Mother. ***See*** Father's Brief at 56. Father further acknowledges that Dr. Shienvold testified that Mother's allegations against Father were "obviously incredibly severe, significant and scary if accurate." ***Id***. Nevertheless, Father argues that the trial court "entirely ignores the testimony surrounding this soundbite." ***Id***. According to Father, the trial court selectively relied on limited portions of Dr. Shienvold's testimony to support its bias against Father. ***Id***. at 57. Father insists that "Dr. Shienvold concluded Father's psychological did not support Mother's 'sever, [*sic*] significant, and scary' accusations." ***Id***. at 57-58.

The trial court considered Father's fourth issue and determined that it lacked merit. The court initially noted that it "did not reject Dr. Shienvold's

conclusions, nor was there any finding that Father posed a threat of harm [to the Children]." Trial Court Opinion, 8/8/25, at 4. The trial court went on to explain that "Dr. Shienvold acknowledged that, if Mother's allegations against Father . . . were true, [*Dr. Shienvold's*] *opinion would change*, stating "evidence of repeated sexual assaults and emotional and financial abuse, certainly would change my opinion, yes." *Id*. at 4-5 (emphasis in original, citation omitted). The trial court additionally noted that it "specifically found Mother's allegations of emotional, financial[,] and sexual manipulation throughout the course of the marriage to be credible and supported by independent evidence. *Id*. at 5.

Based on our review, we discern no abuse of discretion by the trial court in its consideration of Dr. Shienvold's testimony regarding his assessment of the risk of harm posed by Father to the Children. As explained above, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. *See M.A.T.*, 989 A.2d at 20. Here, the record reflects that the trial court *credited* Dr. Shienvold's testimony that Father does *not* pose a threat of harm to the Children, and the court made no finding that Father is a risk of harm to the Children. *See* Trial Court Opinion, 6/12/25, at 7-9 (noting Dr. Shienvold's opinion that "there was nothing to suggest that [Father's] mental health posed a risk of harm to the

Children in this matter, despite that he 'may at times struggle with emotional awareness . . .,'" and making no factual finding that Father posed a risk of harm to the Children).  Although the trial court considered and discussed Dr. Shienvold's concerns regarding Mother's allegations of repeated sexual assaults, and emotional and financial abuse, as well as the fact that Dr. Shienvold would change his opinion regarding Father's risk of harm to the Children if Mother's allegations were found to be true, the court did **not** find that Father posed a risk of harm to the Children despite Mother's allegations. Thus, as we discern no abuse of discretion by the trial court in its consideration of the expert testimony provided by Dr. Shienvold regarding his assessment of the risk of harm posed by Father to the Children, we conclude that Father's fourth issue merits no relief.

In his fifth issue, Father challenges the trial court's consideration of Ms. Romer's testimony regarding her assessment of the risk of harm posed by Mother to the Children.  Father asserts that "Mother's **expert**, Ms. Romer," concluded that Mother posed a risk to the Children due to her ongoing emotional dysregulation when communicating with Father.  Father's Brief at 48 (emphasis added).  Father insists that "the trial court entirely discounted uncontradicted evidence of record, at best oversimplifying, and at worst completely mischaracterizing Ms. Romer's testimony, particularly related to the reasons she concluded Mother poses a risk of harm to the children." **Id**. at 50.  According to Father, the trial court concluded that Ms. Romer's opinion

was based entirely on Mother's ongoing issues with Father, and their inability

to get along. Father submits that, contrary to the trial court's assertion, the

basis for Ms. Romer's opinion could not reasonably be boiled down merely to

Mother's "ongoing emotional dysregulation when it comes to [her]

communication with [Father,]" nor could Mother's behavior reasonably be

characterized as a parent who simply cannot "get along" with the other. *Id*.

Father concludes that "[i]t was manifestly unreasonable and an abuse of

discretion for the trial court to conclude Ms. Romer's uncontradicted

testimony, and *expert* report, failed to establish that Mother poses a risk of

harm to the Children." *Id*. at 54 (unnecessary capitalization omitted,

emphasis and some capitalization added).

The trial court considered Father's fifth issue and determined that it

lacked merit. Initially, the court noted that "Ms. Romer was not proffered,

qualified, or accepted as an expert in the field of threat of harm evaluations

during trial." Trial Court Opinion, 6/12/25, at 8. The trial court went on to

explain:

> It was clear to the court that Ms. Romer's "opinion" was
> based entirely on Mother's ongoing issues with Father, explaining:
> "the ongoing emotional conflict the kids are experiencing is
> unhealthy to see their mother argue with the father, be involved
> in this level of  -- her impulse control at the medical appointments
> or lack thereof is concerning and would over time cause harm to
> the Children. While the court acknowledges that children can
> certainly be psychologically harmed by exposure to their parents
> arguing on a regular basis, the court *does not* believe that is the
> type of psychological impact on the child's well[-]being
> contemplated by [the] legislature, as interpreting it as such would
> effectively provide a sword to strip biological parents of their

physical custody rights in high[-]conflict cases where the two parents simply cannot get along. It is for this reason that [the] court did not find Ms. Romer's testimony sufficient to establish by a preponderance of the evidence that Mother poses an ongoing risk of abuse to the Children.

*Id*. at 9 (emphasis in original, footnote and unnecessary capitalization omitted, some capitalization added).

Based on our review, we discern no abuse of discretion by the trial court in its consideration of Ms. Romer's lay testimony. Father's argument is premised entirely on his incorrect belief that Ms. Romer testified as an expert witness in this matter. However, contrary to Father's assertions otherwise, Ms. Romer was not proffered or qualified as an expert witness, and did not testify as an expert in these proceedings. Thus, the above-stated rules regarding a trial court's consideration of expert testimony do not apply.

Furthermore, the trial court's assessment of the risk of harm posed by Mother was supported, in part, by Ms. Romer's testimony, which indicated that the *only* potential threat of harm posed by Mother to the Children related to her experiencing emotional dysregulation while communicating with Father. *See* N.T., 3/24/25, at 44-45, 49. We also note that the trial court had the benefit of the testimony of Ms. Kahler, who disagreed with Ms. Romer's conclusions, and detailed Mother's significant mental health improvements. *See id*. at 56-65. Finally, the court also heard extensively from Mother regarding her allegations of Father's abusive behavior. Thus, as we discern no abuse of discretion by the trial court in its consideration of Ms. Romer's lay

testimony regarding the risk of harm posed by Mother to the Children, we conclude that Father's fifth issue merits no relief.

In Father's sixth, seventh, and eighth issues, he challenges the trial court's findings pursuant to the custody factors set forth at section 5328(a). As explained above, we must accept the findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. *See Rogowski*, 291 A.3d at 60-61. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court, who viewed and assessed the witnesses first-hand. *See id*. We may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. *See id*.

The paramount concern in a child custody case is the best interests of the child based on the consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual wellbeing. *See Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005). Our courts have ruled that the trial court must consider and evaluate each of the section 5328(a) custody factors before changing or modifying any prior award of custody. *See E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011) (holding that when deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the section 5328(a) factors); *see also* 23 Pa.C.S.A. § 5338(a) (pertaining to modification of custody orders and

requiring that the modification must "serve the best interest of the child").

While a court's consideration of these factors is mandatory, it is within the

trial court's purview as the finder of fact to determine which factors are most

salient and critical in each particular case. *See E.B. v. D.B.*, 209 A.3d 451,

460 (Pa. Super. 2019).

Section 5328(a) provided, at the time of these proceedings,[7] as follows:

### § 5328. Factors to consider when awarding custody

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

---

[7] We note that our General Assembly amended section 5328(a) on June 30, 2025, with an effective date of August 29, 2025. *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). Since these proceedings concluded before the effective date, these amendments did not apply here. *See R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply revised version of statute in proceedings that concluded in the trial court several months prior to the effective date of the at-issue legislation).

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In Father's sixth issue, he purports to challenge the trial court's award of primary physical custody of both Children to Mother based on its findings in relation to the section 5328(a) custody factors. However, the entirety of Fathers argument for his sixth issue consists of the following:

The trial court abused its discretion by entering a custody order contrary to the weight of the evidence and not in the best interest of both [Children]. Father respectfully incorporates by reference statement 1 of this brief as if the same were set forth herein.

Because the record is sufficiently developed to permit this Court to substitute its judgment for that of the trial court, Father respectfully requests this Court reverse the opinions and orders or, alternatively, vacate the opinions and orders and remand back to the trial court.

Father's Brief at 58-59 (unnecessary capitalization omitted).

Similarly, in his seventh issue, Father purports to raise a vague and non-specific challenge to the trial court's factual findings, presumably as to the award of primary physical custody of the Children to Mother. The entirety of Father's discussion of his seventh issue consists of the following: "Father

- 27 -

hereby incorporates the discussion set forth in statement 1 of this brief as if the same were set forth herein." Father's Brief at 74.

Initially, we observe that our rules of appellate procedure specifically require a party to set forth in his or her brief, in relation to the points of his argument or arguments, "discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court] to formulate [a]ppellant's arguments for him." **Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014)

Moreover, when complying with Rule 2119(a), our appellate rules do not allow incorporation by reference of arguments as a substitute for the proper presentation of arguments in the appellate brief. **See Commonwealth v. Dodge**, 77 A.3d 1263, 1275 (Pa. Super 2013). As our Supreme Court has explained:

> "[I]ncorporation by reference" is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to our Court. **Commonwealth v. Edmiston**, . . . 634 A.2d 1078, 1092 n.3 ([Pa.] 1993) (specifying that all claims a litigant desires our court to consider are required to be set forth in the appellate brief and not just incorporated by reference); [**see also**] **Pines v. Farrell**, . . . 848 A.2d 94, 97 n.3 ([Pa.] 2004) (holding that reliance on the "briefs and pleadings already filed in this case" was "not a recommended form of advocacy" and noting that "this Court is not obliged to root through the record and determine what arguments, if any, respondent forwarded below, nor are we obliged to fashion an argument on his behalf").

*Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011). For these reasons, when an appellant attempts to incorporate by reference issues addressed elsewhere and fails to argue them in his brief, the issues are waived. *See Moses Taylor Hosp. v. White*, 799 A.2d 802, 804 (Pa. Super. 2002).

Here, Father provides no meaningful discussion, supported by citations to pertinent legal authority, regarding his sixth and seventh issues. Moreover, our review of his brief reveals no "statement 1." To the extent that Father meant to incorporate his argument related to his first issue,[8] that issue pertained solely to the presumption accorded to Mother, as J.C.F.'s biological parent, by section 5327(b). *See* Father's Brief at 15-40. Thus, as Father failed to provide this Court with any meaningful discussion specifically pertaining to his sixth issue and seventh issues, we deem those issues waived. *See Moses Taylor Hosp. v. White*, 799 A.2d at 804; *see also* Pa.R.A.P. 2119(a).[9]

---

[8] As noted above, we have reordered Father's issues for ease of disposition. Thus, we have reordered the first issue that Father discussed in his brief, which pertained to the presumption accorded to a biological parent by section 5327(b), to issue number eleven.

[9] Even if we were to consider the arguments that Father advanced in relation to the presumption set forth in section 5327(b), and to attempt to determine which of the arguments could also apply to his sixth and seventh issues, we would have determined that Father's sixth and seventh issues lacked merit for the reasons expressed by the trial court in its well-reasoned opinion, wherein

*(Footnote Continued Next Page)*

In his eighth issue, Father challenges the trial court's award of sole legal custody of J.C.F to Mother. Without pointing to any of the section 5328(a) factors which guided the trial court's analysis, Father generally asserts that the trial court abused its discretion. Father maintains that he is capable of making childrearing decisions for J.C.F., has done so for his entire life, and also desires to continue playing an active role in J.C.F.'s life and being a source of security and love. Father asserts that, although Mother has shown an unwillingness to cooperate with Father, the trial court's award of shared legal custody as it relates to T.A.R. reflects a finding that the parties are capable of at least minimal cooperation.

The trial court considered Father's eighth issue and determined that it lacked merit. The trial court reasoned:

> [Father's eighth] issue is another weight of the evidence claim in awarding Mother sole legal custody of J.C.F., again, inviting the [Superior] Court to revisit the weight and credibility determinations of the trial court. Mother is the biological parent of J.C.F., [and] has made clear throughout the proceedings that she objected to [Father's] continued involvement with J.C.F., and the court finds [Mother] should have autonomous decision-making authority and the right to make major decisions on his behalf, including medical, educational[,] and religious decisions. The court found credible Mother's testimony and concern that Father has and will continue to use the Children as a control mechanism over her. Given her elevated status as J.C.F.'s biological parent, the trial court finds that there are ample reasons to award sole legal custody of J.C.F. to Mother.

_____

it carefully explained its consideration of each of the section 5328(a) custody factors and the basis for its custody award. **See** Trial Court Opinion, 6/12/25, at 6-23.

Trial Court Opinion, 8/8/25, at 5-6 (footnote, citations, and unnecessary capitalization omitted, some capitalization added).

Based on our review, we discern no abuse of discretion by the trial court in awarding sole legal custody of J.C.F to Mother. As explained above, we must accept the findings of the trial court that are supported by competent evidence of record and defer to the trial court with regard to issues of credibility and weight of the evidence. *See Rogowski*, 291 A.3d at 60-61. We may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. *See id*. Here, the trial court had the opportunity to view and assess the testimony and credibility of Mother and Father and their respective witnesses. To the extent that the trial court credited Mother's testimony, including her allegations against Father and her concern that he will use the Children as a control mechanism over her, we are bound by that credibility determination. Thus, as we discern no error of law, and the award of sole legal custody of J.C.F. to Mother, as the biological parent, is not unreasonable in light of the sustainable findings of the trial court, we conclude that Father's eighth issue merits no relief.

In his ninth issue, Father again challenges the trial court's award of sole legal custody of J.C.F. to Mother on the basis that she never requested such a modification. *See* Father's Brief at 65-66.

However, our review of the certified record indicates that Mother requested sole legal custody of J.C.F. as early as November 12, 2024. *See* Order Scheduling Custody Trial, 11/12/24, at 2 (wherein the trial court noted that "Mother seeks **sole legal and physical [custody] of [J.C.F.]** and shared legal and physical [custody] of T.A.R.") (emphasis added). Moreover, this Court has held that a trial court may modify custody even in the absence of a specific and formal request, so long as the opposing party has adequate "notice" of the issue. *C.A.J. v. D.S.M.*, 136 A.3d 504, 507 (Pa. Super. 2016). Accordingly, as the certified record reflects that Father received notice of Mother's request for sole legal custody with respect to J.C.F., we find no merit in Father's ninth issue.

In his tenth issue, Father argues that the trial court gave only cursory consideration to the safety conditions set forth in section 5323(e)(1)-(2), which requires the trial court in a child custody case to make certain on-the-record findings if, *inter alia*, "the court finds a history of abuse of the child or a household member by a party or a present risk of harm to the child or an abused party and awards any form of custody to a party." 23 Pa.C.S.A. § 5323(e)(1). As related to these provisions, the term "abuse" is a statutory term of art that refers to one or more of the following acts between family or household members:

> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual

assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S.A. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. . . .

23 Pa.C.S.A. § 6102(1)-(5); **see also** 23 Pa.C.S.A. § 5322 ("Definitions").

Father reasserts his general contention that the trial court's determination that Mother did not pose a risk of harm to the Children is unsupported by the record. Without citation to any legal authority, Father baldly asserts that he was not required to prove by a preponderance of the evidence that Mother presents an ongoing risk of harm to the Children in order for her periods of custody to remain supervised. **See** Father's Brief at 41. Father insists that, "given the uncontroverted evidence of record regarding the risk of harm Mother poses to the Children," it was "manifestly unreasonable for the trial court to decline maintaining safeguards, such as supervised custody." **Id**. at 42 (unnecessary capitalization omitted, some capitalization added).

Contrary to Father's generalized argument, there is no support in the certified record for a conclusion that Mother has ever committed "abuse" of the Children within the statutory definition set by sections 6102 and 5322. Moreover, the trial court made *no* finding that there was a "history of abuse" or "a present risk of harm" by Mother in this case. Indeed, the trial court noted that "there was little to no evidence regarding what 'risk of harm' Mother presents to the Children." Trial Court Opinion, 8/8/25, at 2-3 (capitalization added). Further, as noted previously, the trial court's conclusion that Mother does not pose a "present risk of harm" to the Children is supported by the certified record. Since the trial court did not make any finding that there was a "history of abuse" or "a present risk of harm" by Mother in this case, it was not required to issue the findings anticipated by section 5323(e)(1)-(2). *See* 23 Pa.C.S.A. § 5323(e)(1). Accordingly, we conclude that Father's tenth issue merits no relief.

In Father's eleventh issue, he challenges the trial court's determination that he failed to overcome the presumption set forth in section 5327(b) in relation to the primary physical custody of J.C.F. Pertinently, our legislature has established a statutory presumption in favor of awarding primary physical custody to a biological parent in a custody dispute between a parent and a third party. *See* 23 Pa.C.S.A. § 5327(b). Section 5327(b) provides "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the

parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." *Id*. Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *M.J.S. v. B.B.*, 172 A.3d 651, 660 (Pa. Super. 2017). The presumption applies in any action regarding the custody of a child between a parent of the child and a nonparent, even where the nonparent stands *in loco parentis* to the child. *See id*.

Father contends that it was manifestly unreasonable for the trial court to conclude that he failed to present clear and convincing evidence to rebut the presumption set forth in section 5327(b). Father points out that he stands *in loco parentis* to J.C.F., and claims that the trial court's award of primary physical custody of J.C.F. to Mother is "unsupported by the record and is the product of no meaningful analysis." Father's Brief at 17. According to Father, "[t]his conclusion was only reached by ignoring the uncontroverted evidence presented over the two-day hearing, Father's full-day testimony, the expert reports and their complete testimonies, and relevant portions of Mother's own testimony." *Id*. Father maintains that "[the trial court's] discussions are troublingly incomplete, entirely unrelated to the factor at issue, and/or an actual misrepresentation of the undisputed evidence of record." *Id*. Father generally disagrees with the trial court's assessment of the weight and credibility of the threat of harm evaluations, as well as the court's weight and

credibility determinations with respect to the evidence and testimony provided by Father as to Mother's unsafe behavior, and the evidence and testimony provided by Mother regarding her allegations of sexual, psychological, and financial abuse by Father. ***See*** Father's Brief at 17-40.

The trial court characterized Father's eleventh issue as a "generalized statement inviting the appellate court to revisit the weight and credibility determinations of the trial court." Trial Court Opinion, 8/8/25, at 2. The trial court explained that it determined that Father failed to meet his "burden to prove by clear and convincing evidence that it is in [J.C.F.'s] best interests to be removed from the primary custody of his biological mother by evidence 'so clear, direct, weighty, and convincing so as to enable the trier of facts to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.'" Trial Court Opinion, 6/12/25, at 6.

Furthermore, in connection with its decision to award Mother primary physical custody of both Children, the trial court explained as follows:

> The trial court conducted an in-depth analysis of the allegations of abuse and violence by the parties against one another, and in the end these allegations are equally weighted. With regard to the penultimate incident that resulted in the parties' separation, . . . the court notes that both parties were awarded temporary PFAs, neither of which listed the Children as protected parties, and both parties withdrew their respective petitions at the final hearing. The court emphasizes no witness could explain why Mother posed a risk of harm to the children other than citing to her situational, emotional responses to Father, which the court rejected as a reason to strip a biological parent of their right to be a parent because the parties cannot get along. There was also ample testimony that Mother's situational, emotional responses

were trauma responses due to her PTSD, which witnesses agreed stemmed, at least in part, from her relationship with Father.

Trial Court Opinion, 8/8/25, at 5 (citations and unnecessary capitalization omitted, some capitalization added).

Based on our review, we discern no abuse of discretion by the trial court in reaching its determination that Father failed to overcome the presumption set forth in section 5327(b) when awarding primary physical custody of J.C.F. to Mother. As noted above, Father was required to meet an extremely high burden of proof in order to overcome the presumption accorded to Mother, as J.C.F.'s biological parent. Essentially, Father was required to present evidence that unequivocally established that it is in J.C.F.'s best interests to be removed from the primary custody of Mother. On the record before us, we cannot conclude that Father met this burden.

As noted by the trial court, the record is replete with allegations of abuse and violence by both parties against one another. *See* Trial Court Opinion, 8/8/25, at 5. The trial court, who viewed and assessed the parties first-hand, determined that their competing abuse claims should be weighted equally. *See id*. There was also testimony that Mother's situational, emotional responses were trauma responses due to her PTSD, which witnesses agreed stemmed, at least in part, from her relationship with Father. *See id*. To the extent that Father asks this Court to reweigh the evidence, and to accord no weight to Mother's evidence and testimony, we decline to do so. *See Rogowski*, 291 A.3d at 60-61 (holding that, with respect to issues of

credibility and weight of the evidence, we must defer to the trial court, who viewed and assessed the witnesses first-hand). Thus, as the trial court's determination that Father failed to meet his burden to prove by clear and convincing evidence that it is in J.C.F.'s best interests to be removed from the primary custody of Mother, his eleventh issue merits no relief.

In Father's twelfth issue, he challenges the trial court's ruling to permit Mother to relocate in the absence of Mother filing a notice of proposed relocation or compliance with the notice requirements set forth in section 5337(c). Section 5337(c)(1) requires that the party proposing relocation "shall notify every other individual who has custody rights to the child." 23 Pa.C.S.A. § 5337(c)(1). Section 5337(c)(2) provides that notice shall be sent by certified mail, return receipt requested, and sets forth the timeframe for doing so. See 23 Pa.C.S.A. § 5337(c)(2)

Importantly, a "proposed relocation" in the child custody context is not merely a change in the residence of a parent. Rather, for purposes of section 5337, "relocation" is limited to those situations where the proposed change in residence will "significantly impair[] the ability of a nonrelocating party to exercise custodial rights" to a child. 23 Pa.C.S.A. § 5322. This Court has interpreted this statutory language to mean that, "while relocation is in part defined by a change in residence of the child, it is evident that a relocation as contemplated in the statute requires a ***negative custodial impact on a 'nonrelocating party*.'" ***D.K. v. S.P.K.***, 102 A.3d 467, 472 (Pa. Super.

2014). The requirement of a negative custodial impact is further emphasized in Pennsylvania Rule of Civil Procedure 1915.17, which states, in relevant part, "[a] party proposing to change the residence of a child **which significantly impairs the ability of a non-relocating party to exercise custodial rights** must notify every other person who has custodial rights to the child. . . ." Pa.R.Civ.P. 1915.17(a).

Father contends that Mother did not comply with the notice requirements set forth in section 5337(c). Father asserts that "it is unknown how said relocation could impact Father's periods of physical custody." Father's Brief at 45. Nonetheless, Father insists that Mother's proposed relocation "interferes with Father's exercise of custodial rights and, as such, constitutes a 'relocation[.]'" *Id*. Father maintains that "[t]he Poconos spans multiple counties and states." *Id*. Father argues that because he was unaware that Mother's relocation was a possibility until the custody trial, "he had no opportunity to object or be heard on the issue." *Id*. at 46.

The trial court considered Father's twelfth issue and determined that it lacked merit. The court rejected Father's claim that the notice requirements of section 5337(c) were implicated, as it concluded that Mother's proposed relocation did not significantly impair Father's right to exercise his custodial rights. In reaching its determination, the trial court noted that "a move by Mother to the Poconos, where she would have extended family and other supports, **would be the same distance, if not closer, to Father than her**

*current residence* in York." Trial Court Opinion, 8/8/25, at 3-4; *see also* Trial Court Opinion, 6/12/25, at 24 (wherein the trial court noted that "[i]f Mother resides in the Poconos area in the future, *there will not be any detriment to Father and will be a benefit as it would likely reduce the time to transport the [C]hildren*" (emphasis added)).

Based on our review, we discern no abuse of discretion by the trial court in reaching it s determination that Mother was not required to comply with the notice requirements provided by section 5337(c). Father has failed to identify any negative impact on his custody rights that will result from Mother relocating to the Poconos area. To be sure, Father does not argue that Mother's proposed relocation will *increase* the time to transport the Children. In the absence of any evidence of record of a negative custodial impact, or evidence of a significant impairment of Father's custodial rights, we conclude that Mother's proposed move does not constitute a "relocation" within the meaning sections 5337(a) and 5322. *See* 23 Pa.C.S.A. §§ 5337(a), 5322; *see also D.K.*, 102 A.3d at 472.

Moreover, while the trial court granted Mother the right to relocate to the Poconos area, Mother specifically testified at the custody hearing that it was her plan to eventually move back to the area of her hometown, which is located in the Poconos. *See* N.T., 5/9/25 (Morning), at 81-82. In referencing the "Poconos" in its custody order, we readily discern that the trial court was referring to Mother's intent to relocate to the Poconos area. *See* Final Order

for Custody, 6/12/25, at 14-15; **see also** N.T., 5/9/25 (Morning), at 81-82. Accordingly, Father's twelfth issue merits no relief.

In his thirteenth and final issue, Father complains that the trial court's issuance of its custody opinion was untimely. Rule of Civil Procedure 1915.4(d) sets forth time limits for the issuance of custody decisions, as follows:

> **(d) Prompt Decisions.** The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

Pa.R.Civ.P. 1915.4(d). In the present matter, the trial court entered its custody order and opinion on June 12, 2025, which was thirty-three days after the conclusion of the custody trial on May 9, 2025.

Without providing any explanation or discussion, Father asserts that the court's delay in entering its custody decision, without issuing an "order showing good cause for this delay," caused "prejudice" and "prevented" Father from seeking "immediate" relief. Father's Brief at 72-73.

The trial court considered Father's final issue and determined that it lacked merit. The trial court initially noted that, "[a]t the conclusion of the proceedings, the trial court advised the parties and their counsel on the record that it "would have an opinion and order out hopefully within the next 14 days. *If not, by the 45 days that [Rule 1915.4(d)] required*." Trial Court Opinion, 8/8/25, at 10 (*citing* N.T., 5/9/25 (Afternoon), at 70) (emphasis

- 41 -

added). The trial court went on to explain that "[t]his was a two-day trial with extensive testimony, exhibits, and resulted in a 27-page written opinion. The parties were aware of the timeline set forth for the issuance of the decision and the reasons therefore." ***Id***.

Based on our review, we conclude that the trial court orally alerted the parties and their counsel at the conclusion of the custody trial that, although it would endeavor to issue a prompt decision in the matter, the preparation of its custody decision could necessitate additional time extending beyond the fifteen-day period contemplated by Rule 1915.4(d). ***See*** N.T., 5/9/25 (Afternoon), at 70. By indicating its awareness of the forty-five-day limit provided by Rule 1915.4(d), and its assurance to the parties and their counsel that the custody decision would be filed within that timeframe, the trial court implicitly extended the date for its custody decision beyond the fifteen-day period for good cause. ***See id***.

While we acknowledge that the trial court did not explicitly extend the date for its custody decision "by order entered of record showing good cause for the extension," we note that our Supreme Court, "in its capacity as the exclusive rule-making authority," has provided "no basis for relief" where a trial court fails to abide by the time limits set by Rule 1915.4(d). ***Schultz v.***

**Schultz**, 108 WDA 2025 (Pa. Super. 2025) (unpublished memorandum at

*28).[10]  As the **Schultz** Court explained:

> "[E]ven if the trial court's delay was unjustified, Father would not
> be entitled to relief.  Rule 1915.4(d) does not provide a remedy
> or any other sanction when the trial court does not comply with
> the time limits.  **See Dear v. Dear**, 3023 EDA 2023 . . . (Pa.
> Super. 2024) ([unpublished memorandum]) (noting that [Rule]
> 1915.4(d) does not provide a remedy or sanction for failure to
> comply); **see also Heffley v. Heffley**, 977 WDA 2023 . . . (Pa.
> Super. 2024) ([unpublished memorandum]) (declining to vacate
> a custody order due to a violation of [Rule] 1915.4(d) because it
> does not provide a remedy)."

**Id**. (quoting **Michael v. Michael**, 334 A.3d 384 (Pa. Super. 2025)

(unpublished memorandum at *13)).  Thus, as Rule 1915.4(d) does not

provide a remedy or sanction for failure to comply, Father's final issue merits

no relief.

As none of Father's issues merit relief from this Court, we affirm the trial

court's custody order.

Order affirmed.

Judge Kunselman joins.

Judge McLaughlin concurs in the result.

---

[10] **See** Pa.R.A.P. 126(b) (providing that an unpublished or "non-precedential
decision" of the Superior Court, filed on or after May 1, 2019, may be cited
for its persuasive value).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/24/2026